ORIGINAL

FILED
JAN 1 2 2007
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| INFOPRO GROUP, INC., Plaintiff, v. THE UNITED STATES, Defendant. | NO. 07-15 C |

**COMPLAINT**

**COMES NOW** Plaintiff InfoPro Group, Inc. ("InfoPro") and hereby files this Complaint against Defendant United States, alleging as follows:

**PARTIES AND JURISDICTION**

1.

InfoPro is a government contractor providing medical transcription services to the United States Government.

2.

This Court has jurisdiction pursuant to the Contract Disputes Act, 41 U.S.C. § 601, *et seq*. and the Tucker Act, 28 U.S.C. § 1491, *et seq*.

3.

This action involves medical transcription services provided to the United States Department of Veterans Affairs ("VA") by InfoPro pursuant to Contract No. V259P-0047 (the "Current Contract"). A true and correct copy of the Current Contract is attached hereto as Exhibit A.

4.

On December 17, 2001, InfoPro was awarded Contract No. V259P.009 (the "Old Contract") and entered into an explicit contractual relationship with the VA for the provision of medical transcription services for various medical centers administered by VA. A true and correct copy of the Old Contract is attached hereto as Exhibit B.

5.

In 2003, VA re-solicited bids for the medical transcription services covered by the Old Contract, and InfoPro was awarded the Current Contract.

6.

On November 2, 2005, InfoPro submitted a Certified Claim and Request for Contracting Officer's Final Decision for additional compensation due for the medical transcription services it provided under the Current Contract, pursuant to the Contract Disputes Act, 41 U.S.C. § 605(a). A true and correct copy of InfoPro's Certified Claim is attached hereto as Exhibit C.

7.

The VA Contracting Officer issued a final decision denying InfoPro's certified claim in a letter dated January 17, 2006. A true and correct copy of the Contracting Officer's decision is attached hereto as Exhibit D.

8.

The Tucker Act provides the Court of Federal Claims with jurisdiction over contract claims or disputes between contractors and the United States arising under the Contract Disputes Act, where a decision of the contracting officer has been issued.

9.

The Contracting Officer has issued a final decision and InfoPro has fulfilled the jurisdictional prerequisites by exhausting its administrative remedies. Therefore, the United States is deemed to have waived its sovereign immunity under the Tucker Act and has consented to be sued in the United States Court of Federal Claims by InfoPro. InfoPro herein appeals the Contracting Officer's decision by bringing this action directly in the United States Court of Federal Claims, under authority granted in the Tucker Act and the Contract Disputes Act.

**FACTUAL BACKGROUND**

10.

InfoPro is one of the premier providers of medical transcription services in the United States.

11.

On December 17, 2001, InfoPro was awarded the Old Contract by VA pursuant to which InfoPro was to provide medical transcription services for various VA-administered medical centers in Colorado.

12.

Under the Old Contract, InfoPro was to be paid an amount calculated by multiplying a fixed-fee by the number of billable lines of transcription. With respect to billing, the Old Contract provided: "Transcribed lines are formatted in 65 character lines. For billing purposes, lines are calculated, [sic] by adding the number of characters in a report [sic] by dividing by 80." *See* Old Contract, Exhibit B, p. 12, sec. C.2(b).

13.

In 2003, VA re-solicited bids for the medical transcription services covered by the Old Contract.

14.

VA awarded the re-solicited contracts to other offerors. InfoPro subsequently filed a size protest with the Small Business Administration and a post-award bid protest with the General Accountability Office.

15.

The Small Business Administration size protest was resolved in InfoPro's favor and InfoPro was awarded the Current Contract for the provision of medical transcription services to VA-administered medical centers located in Denver and Sheridan, Wyoming.

16.

Similar to the Old Contract, under the Current Contract, InfoPro is to be paid a fixed-fee per line of transcription. However, the method for calculating billable lines of transcription differs significantly under the Current Contract.

17.

Under the Current Contract, rather than dividing the total number of characters in a transcription report by 80 to determine the total number of billable lines, as in the Old Contract, the Current Contract provides as follows:

> 11.3 Billing Format: Billing shall be monthly on a "12 pitch" typing line of 65 characters per line. However, ¾ typed lines of less than 65 characters per line may be billed as a full line when use of carriage return is required. A character is defined as a keystroke, to exclude spaces between words. Headers and footers are excluded in the line length except for the first page of each report. Contractor may include up to a 65-character line at the end of each report in VISTA for Contractor's identification and verification purposes; however, this shall be at no cost to the VA. Carriage returns to create blank lines are excluded.

*See* Current Contract, Exhibit A, p. 21, sec. 11.3.

18.

Thus, the plain terms of the Current Contract require InfoPro to implement a visible-line counting methodology, whereby bills are formulated by multiplying a fixed-fee amount by the actual number of visible lines in a transcription report.

19.

Despite the initial period of the Current Contract, InfoPro inadvertently continued to calculate its bills in the same manner as it had under the Old Contract, resulting in a significant "underbill" to VA.

20.

VA also erroneously deducted twenty-percent from certain invoices submitted for payment by InfoPro due to InfoPro's alleged failure to meet "Turn Around Time" (TAT) performance requirements specified in the Current Contract.

21.

InfoPro investigated VA's allegations and discovered (1) that VA had improperly imposed TAT penalties based on an incorrect TAT performance rating determination; and (2) that it had been inadvertently under-billing VA for the transcription services it was providing under the Current Contract.

22.

By letter dated December 14, 2004 addressed to the Contracting Officer, Danny Freeman, InfoPro sought additional information from VA supporting VA's imposition of TAT penalties and informed VA of its intent to revise its billing methodology in accordance with its interpretation of the Current Contract's billing language.

23.

In a letter dated January 14, 2005, InfoPro provided VA with revised invoice amounts and detail supporting its amended billings beginning with July 2003.

24.

By letter dated January 31, 2005, VA responded to InfoPro's December 14, 2004 request for additional information supporting VA's imposition of TAT penalties.

25.

By letter dated February 14, 2005, VA informed InfoPro that it would adjust all future invoices submitted by InfoPro by a calculation based upon an average of the nine months' invoices submitted prior to December 2004, until such time as the line count methodology dispute was resolved.

26.

InfoPro attempted on several occasions to informally resolve the line count dispute with VA in the months following VA's February 14, 2005 letter, and continued to submit billings reflecting the visible line methodology.

27.

VA continually rejected InfoPro's invoices and refused to provide additional compensation for InfoPro's prior invoices.

28.

On August 16, 2005, InfoPro requested guidance from the Contracting Officer as to the proper line count methodology under the Current Contract.

29.

Rather than directly providing the guidance InfoPro requested, VA responded by simply referring InfoPro back to the language contained in the Current Contract.

30.

Unbeknownst to InfoPro, the same VA contracting office has adopted InfoPro's interpretation of identical unambiguous contract language in connection with other contracts for medical transcription services. *See* Exhibit E.

31.

Amendment No. 1 to Request for Quotation 259-016-04, dated July 1, 2004, issued by the same VA contracting office, contains "Billing Format" language identical to the provision in the Current Contract quoted above in Paragraph 17. *See* Exhibit E, p. 15, sec. 11.3.

32.

Further, the Amendment also contains the following "Line Count Methodology" provision to clarify the proper billing practice:

> 11.4.1 Line Definition – A Character Gross Line shall consist of a maximum of sixty five (65) characters in length, with margins set for (65) maximum characters per visual line. Font will be Courier New 11 Point. *Any line with typed text is counted as a billable line no charges are assessed for blank lines (a line containing no text).* If underlining and or bolding appears within a line of text, the combination of underline, bold, and text are counted as a single line. Transcription is completed in Microsoft Word.

*See* Exhibit E, p. 15, sec. 11.4.1 (emphasis added).

33.

It is clear that VA has interpreted the contract language contained in both the Current Contract and Amendment No. 1 to RFQ 259-016-04 to require a visible-line (or "gross" line) counting methodology, wherein VA is billed an amount calculated based on the amount of visible lines of transcription in each report.

34.

On November 2, 2005 InfoPro submitted a Certified Claim and Request for Contracting Officer's Final Decision to VA Contracting Officer, Danny Freeman. In that Certified Claim, InfoPro sought a total of $351,075.92, plus interest pursuant to the CDA, to compensate InfoPro for the improperly-charged TAT penalties and the VA's improper billing calculations from the beginning of the Current Contract through October, 2005. Additional amounts have been improperly deducted since that date.

35.

The Contracting Officer issued a final decision denying InfoPro's claim in a letter dated January 17, 2006.

36.

In that final decision, the contracting officer referred to a sample of five transcription reports which the Contracting Officer claimed supported its decision. Copies of those reports are attached hereto as Exhibit F.

37.

The Contracting Officer's visible line count for each sample job matches the line count in InfoPro's amended bills. *See* Exhibits F and G (excerpts of applicable invoices). Thus, the Contracting Officer's own analysis confirms that InfoPro is due the additional amounts claimed.

38.

InfoPro has exhausted its administrative remedies and hereby submits this claim to the United States Court of Federal Claims pursuant to the Contract Disputes Act, 41 U.S.C. § 605(a).

**COUNT I: BREACH OF CONTRACT [BILLING METHODOLOGY]**

39.

InfoPro incorporates by reference the allegations contained in Paragraphs 1 through 38 above as fully as if said allegations were set forth herein verbatim.

40.

InfoPro entered into a contractual relationship with VA under the Current Contract.

41.

InfoPro has fulfilled all of its contractual obligations and has provided medical transcription services to the VA-administered medical centers, as contracted.

42.

Under plain language of the Current Contract, InfoPro is entitled to bill VA according to the number of visible lines contained in each transcription report.

43.

VA has breached its contractual obligation by rejecting InfoPro's bills calculated according to the number of visible lines.

44.

VA has impermissibly required the adherence to a billing methodology that violates the visible line count billing provisions of the Current Contract.

45.

Accordingly, InfoPro is entitled to additional compensation, plus interest.

46.

All conditions precedent to the relief sought in this count of the Complaint have occurred, have been met, or have been waived.

## COUNT II: BREACH OF CONTRACT [TAT PENALTIES]

47.

InfoPro incorporates by reference the allegations contained in Paragraphs 1 through 46 above as fully as if said allegations were set forth herein verbatim.

48.

InfoPro entered into a contractual relationship with VA under the Current Contract.

49.

InfoPro has fulfilled all of its contractual obligations and has provided medical transcription services to the VA-administered medical centers, as contracted.

50.

The plain language of the Current Contract provides the protocol for the proper imposition of TAT penalties.

51.

VA improperly applied TAT penalties against InfoPro under the Current Contract.

52.

Accordingly, VA should not have deducted $32,078.54 in amounts due to InfoPro. InfoPro is entitled to this amount, plus interest.

53.

All conditions precedent to the relief sought in this count of the Complaint have occurred, have been met, or have been waived.

**WHEREFORE**, InfoPro demands judgment in its favor and against the United States as follows:

(a) As to Counts I and II, that InfoPro be awarded damages for VA's breach of contract in an amount to be determined upon the trial of this matter, but in no event less than $351,075.92, plus the additional amounts improperly deducted since October 2005, plus interest.

(b) As to both Counts, that InfoPro be awarded fees and costs;

(c) That this Court grant such other and further relief to InfoPro as is just and proper.

This 10th day of January, 2007.

ALSTON & BIRD LLP

[signature]

Jeffrey A. Belkin
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
(404) 881-7000 (telephone)
(404) 881-7777 (facsimile)

*Attorney for InfoPro Group, Inc.*