IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| INFOPRO GROUP, INC. | ) | |
| Plaintiff, | ) | No. 07-15C |
| v. | ) | (Senior Judge Smith) |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**INFOPRO'S RESPONSE TO DEFENDANT'S REQUEST TO CONTINUE STAY OF PROCEEDINGS**

Pursuant to the Court's order of March 26, 2008, Plaintiff, InfoPro Group, Inc. ("InfoPro") hereby files this response and opposition to Defendant's Request to Continue Stay of Proceedings ("Defendant's Stay Request"). Defendant's Stay Request seeks another four month stay, pending the resolution of an investigation by the Department of Veterans Affairs ("VA") Office of Inspector General ("OIG"). InfoPro opposes the proposed stay because a review of the competing interests demonstrates that the proposed extension of the stay would not "maintain an even balance" and would be unfairly prejudicial to InfoPro. In particular, the VA OIG investigation is not "related" or "substantially similar" to the claim asserted by InfoPro, InfoPro's due process rights have been infringed by the delay, and the duration of the stay has become unreasonable.

## I. BACKGROUND

*InfoPro's Claim*

InfoPro instituted this action on January 17, 2007, and the case involves a billing dispute under Contract No. V259P-0047 between InfoPro and the Department of Veterans Affairs ("VA") for medical transcription services at two VA-Administered

medical centers located in Denver, Colorado and Sheridan, Wyoming. (Complaint, ¶ 3, 15).

InfoPro's claim arises from a "Certified Claim and Request for Contracting Officer's Final Decision" to the VA submitted on November 2, 2005, seeking $351,075.92 plus interest for improperly-charged Turn-Around-Time ("TAT") penalties and the VA's improper billing calculations from July 2003 through October 2005 at the Denver and Sheridan facilities. (Complaint, ¶ 34).

*The Investigation*

InfoPro has been aware of an investigation by the VA related to certain of its contracts for over five years. As early as October 2002, InfoPro began voluntarily cooperating with investigators and providing documents in response to VA inquiries. During the summer of 2003, the FBI executed a search warrant, seizing records and computers from InfoPro.

A grand jury subpoena was served on InfoPro on August 29, 2003, and requested the following documents:

> Provide any and all documents referring or relating to your arrangements, contracts and/or agreements with Global Data Source and Endeavor and any company subcontracted for transcription services, including but not limited to drafts, amendments, modifications, renewals, extensions and side agreements, for transcriptions during the period of January 2000 to the present.

In response to that subpoena, InfoPro produced numerous documents, including contractual agreements dating back to 2000. At that time, the focus of the investigation appeared to be the alleged use of off-shore labor and alleged over-billing due to the use of time instead of per line billing methods.

*Procedural Posture and Previous Stays*

Since InfoPro's claim for the Denver and Sheridan facilities was filed in January 2007, the Government has requested several extensions sought to suspend these proceedings several different times. On March 9, 2007, and April 11, 2007, the Government requested extensions of the period in which to file its answer. Before filing its Answer, the Government filed a motion to suspend the proceedings on May 11, 2007, pending a resolution of an investigation by the VA OIG.

In support of the May 2007 motion for a six-month stay in the civil proceeding, the Government submitted the Declaration of Carl Scott, an investigator employed by the VA OIG ("2007 Scott Declaration"). In paragraph five of the 2007 Scott Declaration, Agent Scott declared that "it is expected that a decision will be made in the summer of 2007 whether to pursue criminal charges against InfoPro." Although Plaintiff did not believe there was a relationship between the broad investigation being conducted by the VA OIG and InfoPro's specific claim for billings from July 2003 to October 2005 under Contract No. V259P-0047 for the Denver and Sheridan facilities, it did not oppose the Government's request for a stay because the stay was of a short time period, limited in time and otherwise appeared reasonable. On May 11, 2007, the Court granted the Government's motion to suspend the proceedings "for six months pending the criminal investigation."

InfoPro was not made aware of any decisions in the summer of 2007 regarding potential criminal charges against InfoPro. In fact, InfoPro is not aware of any activity conducted by the Government in furtherance of its pending investigation between May and November 2007. Instead, as the six-month Court ordered stay was coming to a close,

the parties filed a Joint Status Report with the Court on November 26, 2007. At that time, the Government advised the Court that the criminal investigation was "proceeding and the Government expects that a decision as to whether to proceed with criminal charges will be made at the end of February, 2008." The Government requested a stay "until the criminal investigation is completed." Although the Plaintiff did not oppose a stay for an additional four months, it did oppose the unlimited extension requested by the Government.

On November 27, 2007, the Court granted the Government's motion to continue the stay "for an addition[al] four months pending the criminal investigation." A grand jury subpoena was served on InfoPro on January 14, 2008. This subpoena requested, among other things, transcription logs and billing invoices for 14 facilities from January 2002 through July 2004, including Denver. As the four-month Court ordered stay was coming to a close, the parties filed a Joint Status Report March 24, 2008. The parties were unable to agree on whether the stay should continue and proposed a briefing schedule.

On April 7, 2008, the Government filed a motion to extend the stay yet again, and again relies upon another Declaration from Agent Carl Scott ("2008 Scott Declaration"). The 2008 Scott Declaration does not identify any new developments in the criminal investigation as the basis for the proposed extension. Moreover, this time, nearly a year after his previous declaration, Agent Scott has and again advised the court that "it is expected that four months will be sufficient to complete the criminal investigation to the point that a decision of whether to file criminal charges may be made." (Scott Declaration II, ¶ 7). For the reasons stated below, we oppose any further stay of these

proceedings, as the Government has had long enough to investigate, and InfoPro has been required to wait for an Answer to its complaint for over a year, and the connection between the contract at issue in the Complaint and the contracts apparently at issue in the investigation are tenuous at best.

## II. ARGUMENT AND CITATION OF AUTHORITY

In support of its request, Defendant relies on a line of cases that recognize the wisdom of staying a civil action pending a criminal investigation and possible prosecution in order to avoid the conflicts inherent in concurrent proceedings. See e.g., Luigi Goldstein, Inc. v. United States, 217 Ct. Cl. 733 (1978); Litton Systems, Inc. v. United States, 215 Ct. Cl. 1056 (1978); Peden v. United States, 512 F.2d 1099 (Ct. Cl. 1975).

Nevertheless, determining whether a stay is granted "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Landis v. North American Co., 299 U.S. 248 (1936). The courts have not articulated a bright-line test for determining whether a civil case will interfere with an ongoing criminal investigation. Rather, a court must make this determination on a case by case basis. Decisions of this court do, however, list three factors that a court should consider.

First, whether there is a "clear showing, by direct or indirect proof that the issues in the civil action are '**related' as well as 'substantially similar'** to the issues in the criminal investigation. Second, the moving party must "make a clear showing of **hardship or inequity** if required to go forward with the civil case while the criminal case is pending." Third, the movant must establish "that the duration of the requested stay is not **immoderate or unreasonable**." Ampetrol, Inc. v. United States, 30 Fed. Cl. 320,

321(1994) (emphasis added) (citing St. Paul Fire & Marine Ins. Co. v. United States, 24 Cl. Ct. 513, 515 (1991)).

### A. InfoPro's Claims Are Not "Substantially Similar" to the Apparent Focus of the Government's Investigation.

Under the Ampetrol decision, the Defendant must make a "clear showing, by direct or indirect proof that the issues in the civil action are **'related' as well as 'substantially similar'** to the issues in the criminal investigation." Ampetrol, Inc. v. United States, 30 Fed. Cl. 320, 321(1994) (emphasis added). In Ampetrol, the Defendant's request for a stay was granted because the "underlying transaction in the civil case ... will be the central focus of the criminal case." Id.

Here, the Government has failed to make such a showing because it has provided little information, much less direct or indirect proof, regarding the issues in the criminal investigation. The only information provided in support of its motion regarding the scope of its investigation includes:

- "InfoPro is alleged to have committed possible criminal acts in connection with its billing practices in connection with medical transcription serves provided by InfoPro to several VA Medical Centers." (2008 Scott Declaration ¶ 2).[1]
- "[T]he Government's investigation of alleged criminal fraud involves over-billing by inflating the line count when billing for transcription services, which is the same issue as alleged in plaintiff's complaint ...." (Defendant's Request for Stay, p. 5).

[1] For the sake of clarity, InfoPro is not aware of any formal allegations of misconduct being issued or filed by the Government, whether an indictment, information, or complaint. While this may be only a minor semantic difference, we have no knowledge of any actual "allegations" against InfoPro, only an investigation that the Government apparently believes might lead to allegations against InfoPro.

The VA OIG has had InfoPro's business and computer records since the FBI raid in July 2003 and its investigation has ranged from an inquiry into the use of off-shore labor, to billing by time instead of by line count, and now "over-billing by inflating the line count." Surely the Government has had sufficient time to complete its investigation.

Moreover, there is no averment from the Government, like in the St. Paul and C3 cases, that the "criminal investigation relates specifically to [Plaintiff's] claims under the contract which is presently subject to civil litigation before this court." St. Paul Fire & Marine Ins. Co. v. United States, 24 Cl. Ct. 513, 514 (1991); see also C3, Inc. v. United States, 5 Cl. Ct. 659, 660 (1984) ("the affidavit of the responsible Assistant United States Attorney states that the grand jury is investigating [Plaintiff] on allegations of fraud in connection with the 'same contract at issue in this case.'").

Similarly, there is no averment from the Government, like in the St. Paul and C3 cases, that the "contract payments sought in the Claims Court are the primary focus of the criminal investigation." St. Paul Fire & Marine Ins. Co. v. United States, 24 Cl. Ct. 513, 516 (1991) see also C3, Inc. v. United States, 5 Cl.Ct. 659, 660 (1984) ("the contract payments plaintiff presently seeks here, under contract ## …, have been characterized by the contracting officer as 'tainted by fraud,' and are the primary focus of the grand jury's investigation.").

Indeed, had the Government been investigating the very contract at issue, clearly Defendant would have stated so clearly in its supporting affidavit. Because it did not, the Court may assume that the contract at issue in the Complaint is not one of the contracts at issue in the pending investigation. There is a reason for this -- the contract at issue in this case has a very clear and concise required billing methodology -- a calculation of a total

number of characters which is then divided by a specified divisor. (Complaint ¶ 16-18). Conversely, any dispute related to any of the other contracts and facilities focuses on entirely different contractual billing provisions, either billing by dictation time or billing by vague language which arguably might translate to "visible line" billing.

Finally, there is no averment from the Government, like in the St. Paul case, that the "the investigation involves the same facts and witnesses that are at issue in this case; that is the facts in this action track those which lead to the criminal investigation." St. Paul Fire & Marine Ins. Co. v. United States, 24 Cl. Ct. 513, 514 (1991). Because Defendant has failed to make a clear showing that the issues in the civil action are "related" or "substantially similar" to those being pursued in the five year old criminal investigation, the Defendant's Stay Request should be denied.

**B. The Defendant Has Not Made A Clear Showing of Hardship or Inequity if Required to Go Forward.**

The moving party must also "make a clear showing of **hardship or inequity** if required to go forward with the civil case while the criminal investigation is pending." Ampetrol, Inc. v. United States, 30 Fed. Cl. 320, 321 (1994) (emphasis added) (citing St. Paul Fire & Marine Ins. Co. v. United States, 24 Cl. Ct. 513, 515 (1991)). The primary reason that courts attempt to avoid concurrent civil and criminal proceedings is that "the broader discovery permissible in civil proceedings should not be used to compromise parallel criminal proceedings." Litton Systems, Inc. v. United States, 215 Ct. Cl. 1056, 1056 (1978). This is especially a concern where the concurrent criminal proceeding will "churn over the same evidentiary material." St. Paul, 24 Cl. Ct. at 516. However, it is important to note that the Supreme Court places the heavy burden of establishing

entitlement to a stay on the movant to show a *clear* case of hardship on being required to go forward. St. Paul Fire & Marine Ins. Co. v. United States, 24 Cl. Ct. 513, 515 (1991).

Unlike a case where a "target" files a civil claim in an attempt to utilize broader discovery rights as a backdoor method of obtaining information regarding the criminal investigation, InfoPro believes that it is entitled to the improperly-charged Turn-Around-Time ("TAT") penalties and compensation for the VA's improper billing calculations from July 2003 through October 2005 at the Denver and Sheridan facilities. InfoPro will be entitled to prove its claim through straight-forward direct evidence supplied by employees, former employees and certain government personnel. Moreover, to the extent the Government wishes to pursue claims against InfoPro for contracts other than Contract No. V259P-0047, those claims would be permissive, not compulsory counterclaims, in the civil case and could be brought in a future action at the Government's leisure.

Indeed, the disclosure and subsequent use in the civil case of the materials obtained pursuant to the grand jury subpoenas and warrant is prohibited by Rule 6 of the Federal Rules of Criminal Procedure and is permissible only pursuant to a court order under Rule 6(e)(3)(C)(i). United States v. Sells Engineering, Inc., 463 U.S. 418 (1983). In Sells, the Supreme Court held that "a strong showing of particularized need for grand jury materials must be made before any … disclosure will be permitted by court order." Moreover, the Supreme Court observed that "the Policies of Rule 6 require that any disclosure to attorneys other than prosecutors be judicially supervised rather than automatic." Id. at 435. Because of the strong protections in place for grand jury materials, it is further unlikely that either party will "be fishing in the same pond for evidence." See Ampetrol, Inc. v. United States, 30 Fed. Cl. 320, 321(1994).

### C. Defendant Failed to Establish That the Duration of the Requested Stay is Not Immoderate or Unreasonable.

Finally, the "movant must establish 'that the duration of the requested stay is not **immoderate or unreasonable.**'" Ampetrol, Inc. v. United States, 30 Fed.Cl. 320 (1994) (emphasis added) (citing St. Paul Fire & Marine Ins. Co. v. United States, 24 Cl. Ct. 513, 515 (1991)). "A stay of civil proceedings may be granted by a court so long as that discretion is not abused and the say is 'kept within the bounds of moderation.'" St. Paul Fire & Marine Ins. Co. v. United States, 24 Cl. Ct. 513, 517 (1991). In Litton, the trial court denied the Government's request for a stay pending the resolution of the criminal charges "primarily because of the long and indeterminate suspension being requested." Litton 215 Ct.Cl. at 1056.

Here, the Government has been investigating InfoPro's contracts for over five years, and they have had possession of InfoPro's business records and computers since 2003. Over a year has passed since the Government opined that charging decisions in the criminal investigation would be made by the summer of 2007. Despite the fact that there does not appear to have been any material developments in the investigation since that time, no charging decisions have been made. The Government has requested that the stay be extended an additional four months based upon another prediction of four months. Quite simply, InfoPro has been required to wait long enough, for the conclusion of a long-running investigation that only bears slight resemblance, and little overlap, with the contract and issues at bar in the pending complaint. Defendant should be required to answer InfoPro's complaint.

## III. CONCLUSION

For the foregoing reasons, InfoPro respectfully requests that the Court deny Defendant's Stay Request.

This 17th day of April, 2008.

ALSTON & BIRD LLP

/s / Jeffrey A. Belkin

Jeffrey A. Belkin
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
(404) 881-7000 (telephone)
(404) 881-7777 (facsimile)

*Attorney for InfoPro Group, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of April 2008, a copy of the foregoing **INFOPRO'S RESPONSE TO DEFENDANT'S REQUEST TO CONTINUE STAY OF PROCEEDINGS** was filed electronically. I understand notice of this filing will be sent to all parties by operation of the Court's electronic filing system. The parties may access this filing through the Court's system.

/s / Jeffrey A. Belkin



LEGAL02/30778251v1